82 So.2d 510 (1955)
Michael OLESKY and Arthur W. Chairsell, Appellants,
v.
Daniel J. NICHOLAS, Fred J. Nicholas, Josephine B. Bowerman, Sadie S. Moreno, Amelia E. Nicholas, Adam A. Nicholas and Frieda T. Nicholas, Appellees.
Supreme Court of Florida. Special Division B.
September 16, 1955.
Rehearing Denied October 13, 1955.
Myers, Heiman & Kaplan and Leon A. Epstein, Miami, for appellants.
Rufus C. Sundie, Miami, for appellees.
THORNAL, Justice.
Appellants were defendants in a proceeding brought by the appellees to have certain property of the parents of the appellees declared homestead and, therefore, exempt from the liens of certain judgments held by appellants. From a final decree of the Chancellor holding the property to be *511 a homestead and business house and, therefore, exempt from the judgment liens, the appellants take this appeal seeking reversal on the proposition that the record shows that the parents of the appellees had abandoned the exempt character of a portion of the property alleged to have been a business house, and, also on the further proposition that the two judgments held respectively by the appellants were recovered in an action for malicious prosecution and the Florida constitutional exemption does not liberate the homestead from the lien of a judgment for a malicious tort.
Tofic and Sophie Nicholas, the deceased parents of the appellees, acquired the property in question in June, 1940. It consisted of a small house located at 204 N.W. 12th Avenue, Miami, which is otherwise legally described in the complaint. At, or about, the time the property was acquired, one small room and a part of the porch were altered and converted into a one-room sundry store consisting of some 300 to 400 square feet. The father thereupon proceeded to operate what appears to have been a neighborhood sundry store and he continued the operation thereof for an indefinite period of time not shown exactly by the record.
Appellant Olesky recovered a judgment against Tofic and Sophie Nicholas on July 14, 1947, and appellant Chairsell recovered a judgment against both of them on July 28, 1947. Both judgments resulted from a suit for damages in an action for malicious prosecution. The fee title to the property in question was held by Tofic and Sophie Nicholas as an estate by the entirety.
Prior to 1947 the father found it necessary to take a job working for another man in a meat market and subsequently he assisted his sons in the operation of a grocery store at another location. During this time the small room which was attached to the family home place and an integral part thereof remained vacant. It was not rented to anyone else but it was not used by the father for any business. The record shows that business was bad and he could not earn enough on the operation of the small store to support his sizeable family. He, therefore, had to find employment, but always with the intention of returning to the little store and resuming the operation of his business. This he did apparently sometime in 1950, the evidence being in conflict as to just when.
The father, Tofic, died June 28, 1951, a number of months after resuming the operation of his sundry store which was a part of the building where he and his family lived. The mother and one of the children continued to operate the store subsequent to the death of the father and until the death of the mother on March 26, 1952. No effort was ever made by the appellants to levy upon and sell any part of the real estate in question although they did obtain the issuance of a writ of execution.
The complaint alleges that the entire building, including the small store, constituted the residence and business house of the parents and, therefore, their homestead; that the appellees who were plaintiffs below are the children of the deceased parents and, therefore, their heirs at law and consequently entitled to receive the homestead property free of the claims of creditors; that it is necessary to borrow money against the property in order to improve it but that the recorded liens of the two judgments standing of record constitute substantial impediments to the financing contemplated, and that, therefore, an adjudication declaring the entire property exempt from the judgment liens is necessary.
On this appeal the appellants contend that there was a "functional abandonment" of the so-called "business house" of the parents and that this particular segment of the building should be declared subject to the liens of the judgments. Appellants further seek reversal on the proposition that Section 1, Article X, of the Florida Constitution, F.S.A., does not give protection against a judgment lien founded upon a malicious tort.
The Chancellor found for the appellees and declared the entire property free of the judgment liens. We hold that the Chancellor ruled correctly.
*512 Although admitting that the homestead exemption provisions of the Florida Constitution should not be employed as a vehicle to defraud creditors, we have consistently over the years held that homestead exemption laws should be liberally applied in the interest of the family home. Admitting this rule of liberal construction, there are those who contend that the courts have been excessively generous to the point that justice to creditors has often been impaled.
In ruling as we do in the case at bar we sense no encroachment upon the conscience of equity nor any unbalancing of the scales of justice. The history of this law has clearly demonstrated that preservation of a domestic roof and a related business house against the demands of creditors has contributed immeasurably to the happiness and solidarity of family life and such, in the ultimate, is the bulwark of our social system. The instant case, in fact, illustrates its advisability.
We have many times held and we now hold that the question of whether a homestead which includes a business house has been abandoned so as to subject it to the demands of creditors is a question that must be determined by a cautious consideration of the facts and circumstances of each case. Admittedly where a homestead has been acquired it can be waived only by abandonment or by alienation in the manner provided by law. In Nelson v. Hainlin, 89 Fla. 356, 104 So. 589, 590, through an opinion by the late Mr. Justice Whitfield, this Court held:
"Whether there has been an abandonment of a homestead so as to deprive it of its exemption character under the Constitution should be determined by a consideration of all the pertinent facts and circumstances of each case as it arises, having in view the intent and purposes of the organic provisions that the homestead `shall be exempt from forced sale,' and that `the exemptions * * * shall inure to the widow and heirs.'"
In Read v. Leitner, 80 Fla. 574, 86 So. 425, 426, we recognized that the necessities of business and the responsibilities imposed upon the breadwinner to absent himself from the family home place for extended periods of time will not necessarily result in an abandonment of his homestead rights so long as it remains his intention to return and absent a clear-cut intention to abandon the homestead privilege. In the case last cited this Court held:
"The homestead exemption rights in the property having been duly acquired before the judgments were rendered, unless an intentional and actual abandonment of the exemption rights clearly appear, the property is not subject to liens under the judgments; and, when the owner with his family after an absence for business and school purposes again occupy the property claiming that he has not abandoned his homestead rights therein, a forced sale of the property under executions issued on the judgments is a violation of the organic homestead rights."
We applied similar rules to the "business house" included in our constitutional provision in the case of Cowdery v. Herring, 106 Fla. 567, 143 So. 433, 144 So. 348.
Appellants rely heavily upon the case of Smith v. Guckenheimer, 42 Fla. 1, 27 So. 900. In that case this Court simply held that when a homesteader places upon the exempt half-acre improvements or buildings detached from and other than the residence and business house, or when improvements are so placed that they constitute separate improvements from the residence or business house, such separate improvements together with the lands supporting them become subject to demands of creditors.
The problem in the case at bar is not whether the small store-room could be separated from the dwelling house and subjected to the liens of the judgments. We are confronted here merely with the question as to whether the residence and business house admittedly acquired as a homestead *513 within the constitutional exemption has been abandoned insofar as the business house is concerned so as to subject it to the judgment liens.
As we review the evidence it appears to be perfectly clear that there never was any intention to abandon the store-room as the business house of the deceased parents. While it is true they did not use the room for business for a period of several years, it is equally true that they consistently looked forward to the opportunity to re-establish their small business at the location and the absence of the father was occasioned by the necessity of earning a living. In the meantime, the store-room was not rented or otherwise used by any person not a member of the family; it merely remained vacant and unused except at times for the storage of some equipment.
We find no difficulty in holding that the Florida constitutional exemption of homesteads protects the homestead against every type of claim and judgment except those specifically mentioned in the constitutional provision itself and that, therefore, the claim of homestead is good against the demands of a judgment grounded on a malicious tort.
To support their position appellants refer to Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409. The case cited is clearly distinguishable from the one at bar. In Jones v. Carpenter, supra, the alleged homestead owner apparently used the funds of his employer for the purpose of making improvements to his own home place. This Court traced the funds into the home place and applied the provision of the Florida Constitution to the effect that the homestead is not exempt from claims for repair of the alleged homestead.
The exemption of the Florida Constitution extends to any "forced sale under process of any court" subject to the restrictive language of Section 1, Article X, of the Constitution itself.
We hold that this exemption applies as it reads to any forced sale under process of any court subject to the particular exceptions noted in the Constitution itself. It, therefore, applies so as to preclude an execution sale of a homestead even though the judgment is grounded on malicious tort.
Finding no error in the decree of the lower Court, the same is hereby
Affirmed.
DREW, C.J., and TERRELL, and THOMAS, JJ., concur.