150 So.2d 263 (1963)
Delbert WHITE, Appellant,
v.
Elmer POSICK, Appellee.
No. 3268.
District Court of Appeal of Florida. Second District.
February 27, 1963.
Schwarz & Cohen, Miami, for appellant.
William F. Hunter, Jr., Hunter & Paoli, Hollywood, for appellee.
WHITE, Judge.
Delbert White, plaintiff below, appeals a final judgment in ejectment rendered in favor of defendant Elmer Posick.
In previous litigation White's Trucking Service, Inc., on June 15th, 1960, obtained a judgment against Elmer Posick and caused said defendant's property here involved to be levied on and sold at public sale to Delbert White individually. On August 15th, 1960 a sheriff's deed was delivered to Delbert White who then instituted the instant ejectment proceedings. The answer of defendant Elmer Posick asserted title in himself and denied any title or right of possession in the plaintiff. The case was tried by the court without a jury on the issue of whether the property was defendant's homestead and exempt from forced *264 sale under Article X, § 1, of the Florida Constitution, F.S.A.[1]
The defendant purchased the subject property in 1957 and he and his family resided there in a one-story dwelling house. The land area of the property comprised two contiguous platted lots in the City of Hollywood totaling less than one-half acre. The lots will be designated by plat numbers 9 and 10. On Lot 9 was the one-story dwelling house aforesaid. On the rear of this lot was a garage with a single upstairs apartment. This building was used by the defendant's family for storage of personal belongings and as a laundry room. As of the date of the sheriff's sale the defendant had not attempted to rent the apartment. On Lot 10 was a swimming pool and a screened patio enclosure attached to the house on Lot 9. Subsequent to the sheriff's sale the defendant rented out the garage apartment.
The record further reveals that the defendant did not engage in any business in Florida from the time that he moved here to the date of the sheriff's sale in August 1960. Living on proceeds from property sold prior to moving to Florida, the defendant did not attempt to rent out the garage apartment immediately. It was, as stated, used for storage of personal belongings and as a washroom for the family laundry. The period during which the garage apartment was rented following the sheriff's sale was approximately one year.
The final judgment here under review found and adjudged in effect that all of improved Lots 9 and 10 constituted the residence and homestead of the defendant and that the defendant was the absolute owner with the right of possession, that the defendant should reimburse the plaintiff $268.40 for taxes paid by the plaintiff and that the defendant recover his costs.
Touched upon in the trial court, but not stressed, was the question of whether the defendant waived his defense of homestead by not asserting it earlier; nor was this question specifically raised and argued on appeal. We note nevertheless the following comment by the Supreme Court of Florida in Albritton v. Scott, 1917, 73 Fla. 856, 74 So. 975:
"* * * When a homestead to which the exemption from forced sale is attached is sold in violation of the exemption rights conferred by the Constitution, such sale is void. A mere failure to resist the sale is not a waiver of the exemption rights."
Covered by the assignments of error are the questions (1) whether the garage and overhead apartment located to the rear of defendant's dwelling house were a portion of the homestead and (2) whether the swimming pool and patio attached to defendant's house, but located mainly on adjoining lot 10, were portions of the homestead. With respect to question 1, a similar situation was before the Supreme Court of Florida in the relatively recent case of Union Trust Company v. Glunt, Fla. 1956, 85 So.2d 877, 878. In that case Ora A. Glunt died intestate, head of a family, survived by his wife and two adult sons by a former marriage. At the time of his death he owned and occupied an improved parcel of land of less than one-half acre within the corporate limits of the City of St. Petersburg. Improvements on the land consisted of the family residence with a one-story cottage and a two-story garage apartment to the rear of the home. Both of the *265 latter structures were separate from the main residence and were used for rental purposes. In affirming the decree adjudging the entire parcel as homestead, Justice Terrell said:
"We think the chancellor correctly held that the case at bar was ruled by Cowdery v. Herring, supra [106 Fla. 567, 143 So. 433, 144 So. 348]. Since the homestead was within the limits of a city or town, the real point with which we are confronted is whether or not the improvements on the land in question amounted to more than the `residence and business house of the owner'? What constitutes the `residence and business house' of the owner is not defined in the Constitution but in Cowdery v. Herring, supra [106 Fla. 567, 143 So. 435], we said that the intent of this language was to `preserve as exempt a reasonable portion of the homestead improvements, in addition to the owner's actual residence, when it appears that the improvements concerned are being used as a means of making the owner's livelihood.' One's business, trade, craft or other means by which he made his living might have much to do with determining what constituted his `residence and business house'.
"As heretofore pointed out, the improvements consisted of a small cottage and two-story garage apartment. It would not be unreasonable to hold that the two-story garage apartment was a part of the homestead. It is a matter of common knowledge that garage apartments are frequently placed adjacent to the home for rental as well as utility purposes. From the record, the one-story cottage was a one room affair, 12 feet wide and 26 feet long. Its only purpose or design was to produce a small rental or contribution `as a means of making the owner's livelihood.' `Residence and business house of the owner' and employed `as a means of making the owner's livelihood' are flexible clauses that should be construed reasonably to effectuate their purpose depending on the trade, craft or occupation one pursues to make a living." (emphasis ours)
In the present case the storage and laundry room usages of defendant's garage apartment were, in our opinion, within the "utility" classification set out in the Glunt case, supra. It is true that the defendant was not engaged in business after his acquisition of the subject property, but the fact that the garage apartment was used for other than rental purposes at the time of the execution sale does not render that portion of the property non-exempt as urged by the plaintiff.
Plaintiff next contends under question 2 that the swimming pool and the screened patio attached to the house, but located mainly on Lot 10, do not come within the exempt status of homestead. He contends that the pool and patio could be detached from the dwelling house without material injury under the doctrine of Smith v. Guckenheimer, 1900, 42 Fla. 1, 13, 27 So. 900. The latter case simply held that when a structure is so placed and separated that it loses its character as part of the "residence or business house" of the owner, it loses its exempt character along with the land supporting it. See Olesky v. Nicholas, Fla. 1955, 82 So.2d 510, 512. In the present case the garage apartment to the rear of the dwelling house was utilized and the pool and patio were conventional residential appurtenances  all well within the ambit of the Constitution. Plaintiff has cited no decision where any room, patio, porch, swimming pool or similar integral appurtenance has been ordered severed from exempt property, and our own research has failed to reveal any such decision.
It is well settled in Florida that constitutional and statutory provisions with reference to homestead should be interpreted in the liberal and beneficent spirit in which they were conceived and enacted in the interest of the family home. Marsh *266 v. Hartley, Fla.App. 1959, 109 So.2d 34, 38; Olesky v. Nicholas, supra. The trial court heard the testimony, evaluated the various aspects of the controversy and resolved the issues for the defendant. We find no error. The adjoining lots are, in the circumstances, properly classified as homestead realty. The Constitution makes no reference to lot lines nor does it require that the homestead residence and related appurtenances be located on only one "lot." The only explicit limitation in this respect is that the exempt area may not constitute more than one-half acre within the limits of any incorporated city or town. Construing both the limitations and the scope of the Constitution liberally in the interest of the family home, as observed in Marsh v. Hartley, supra, we affirm the judgment of the trial court.
Affirmed.
ALLEN, Acting C.J., and OGILVIE, CLAUDE, Associate Judge, concur.
NOTES
[1] "* * * half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court * * *. The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner * * *."