220 So.2d 403 (1969)
M.M. WEISS, Sr., Appellant,
v.
Leon A. STONE, Appellee.
No. 68-336.
District Court of Appeal of Florida. Third District.
March 4, 1969.
Rehearing Denied April 10, 1969.
Miller & Capp, Fort Lauderdale, for appellant.
Sibley, Giblin, Levenson & Ward and Allan M. Glaser, Miami Beach, for appellee.
Before HENDRY and SWANN, JJ., and WHITE, JOSEPH S., Associate Judge.
HENDRY, Judge.
The defendant below has appealed from an order of the circuit court which made a determination as to whether certain property owned by the defendant was subject to the homestead exemption. The plaintiff in that action had secured a judgment against the defendant for $48,000.00 in October, 1966. The judgment was duly *404 recorded in the Broward County Public Records on October 24, 1966. Shortly thereafter, in December of 1966 the property in question was purchased, apparently with a check for the $9,000.00 down payment given by the defendant's son to the seller,[1] and the balance secured by a first mortgage of which the defendant personally is the principal mortgagor. The property consists of three contiguous lots of land and a one-story five unit apartment building, the defendant occupying one of the units while the remaining four are rented to tenants. The instant proceedings arose when the judgment creditor, appellee, sought to levy on this property in order to subject it to a judicial sale to satisfy the judgment. The appellant responded by delivering a Homestead and Exemption Notice, pursuant to § 222.02 Fla. Stat. F.S.A., to the sheriff, the effect of which was to halt sale and bring the matter before the trial court. The order[2] being appealed followed.
*405 The judgment creditor offers several theories which would demonstrate that the trial court's order correctly determined that all the property except that which is actually occupied by the appellant is not subject to the homestead exemption; furthermore, the appellee also contends that even the occupied premises are excluded from the homestead exemption. Initially, it should be noted that the trial court's finding that the appellant was a head of household is not at issue here. Therefore, our holding is controlled by the nature of the property rather than the person.
Appellant has replied to the above argument by citing us to Orange Brevard Plumbing & Heating Company v. La Croix, Fla. 1962, 137 So.2d 201. This case is authority for the rule which allows monies derived from the judgment debtor's sale of his homestead (such sale having taken place after the recordation of the judgment) to remain exempt from attachment provided those monies are reinvested by the judgment debtor in another homestead within a reasonable time. The above rule was propounded in order to protect those homestead rights enjoyed by the judgment debtor on property he owned before the judgment lien attached. The mere fact that the property was changed by sale into the form of cash does not militate against those rights if the cash is to be reformed once again into a bona fide homestead. In the Orange Brevard Plumbing case, the assets used to purchase a new homestead were conclusively traced and shown to originate from the sale of the first homestead; however, the record on appeal of the case before us is devoid of evidence which would justify our applying the Orange Brevard Plumbing holding here. The testimony here goes to show that the property was in fact purchased by the appellant's son with funds of an unspecified origin, supra, note 1. Without being shown sufficient evidence as to the origin of the assets used in a post-judgment purchase of property claimed as homestead, we cannot apply the rule of Orange Brevard Plumbing.
Therefore, our next inquiry is whether the lower court properly ruled in its determination of what constituted homestead property. Citing the case of Smith v. Guckenheimer, 42 Fla. 1, 27 So. 900, and Lockhart v. Sasser, 156 Fla. 339, 22 So.2d 763, the court below determined that only the premises which the appellant actually occupied, plus an easement for ingress and egress, was to be granted the homestead exemption. The order further set out provisions outlining the obligations of the appellant as to the existing first mortgage and other costs on the property. Determination of homestead character is the subject of some conflict in Florida, and the varied cases in this area which have required judicial resolution have as a common denominator property which was partially residential and the rest income-producing in some manner. The test for removing the homestead exemption in such cases now seems to be whether the lower court, after hearing testimony and examining evidence, can find that the property under examination amounted to more than the "residence and business house of the owner", protected by Fla. Const. Art. X, § 1. What constitutes this "residence and business house" is, however, *406 not defined in the Constitution, and this phrase has been held to be a flexible one which should be reasonably construed to effectuate its purpose, depending on the trade, craft or occupation pursued by the judgment debtor to make a living. See generally, Cowdery v. Herring, 106 Fla. 567, 143 So. 433, 144 So. 348; Union Trust Co. v. Glunt, Fla. 1956, 85 So.2d 877. See also 16 Fla.Jur. Homesteads §§ 35, 36; Annot. 114 A.L.R. 209 (1938).
Although the majority of cases which apply the above premise have favored finding the homestead exemption to be applicable to the various improvements on the property in question, such finding nevertheless becomes a factual one. Therefore, as an appellate court, we are required to review the evidence contained in the record on appeal in a light most favorable to the appellee, and afford the same consideration to all reasonable inferences to be drawn therefrom, as the final order and judgment arrives in this court with a presumption of correctness. E.g., Miami National Bank v. Fink, Fla. App. 1965, 174 So.2d 38 and cases cited therein. Neither the order being appealed nor the record on appeal discloses error as to the court's determination of this aspect of the appellant's property and his business. The court was exceptionally familiar with the appellant's business and livelihood, as it had taken and retained jurisdiction over the case since the first dispute between the parties arose and resulted in the initial judgment being enforced here. Such an intimacy with the facts is the very basis for the presumption of the lower court's correctness and is the main reason an appellate court is hesitant to reverse. Therefore, for the foregoing reasons, the order of the lower court is hereby affirmed.
Affirmed.
WHITE, JOSEPH S., Associate Judge (dissenting).
With great respect for the views of my brothers, I find myself unable to approve the judgment in question. I can find no justification in the record for an adjudication that appellant is entitled to homestead exemption only "on that apartment unit which he actually occupies, together with a right of ingress and egress to a public street. The balance of the property is subject to execution sale."
Hence, I dissent.
NOTES
[1] The source of these funds was never established and the record on appeal fails to reveal any further information as to the origin of the $9,000.00 than the following:

"* * *
"Q Was this cash payment evidenced by a check from you, a bank check?
"A No, not from me directly.
"Q From whom did it come?
"A Oh, it came from a check that was issued by my son, Myron M., Jr.
"Q To you and you endorsed it over?
"A I don't remember the exact procedure of the thing, whether it was endorsed to me. I just don't remember. It might have been given * * *
MR. MILLER: Don't speculate, Mr. Weiss. If you know the answer, I want you to answer it. If you do not know, tell Mr. Ward you do not know.
"Q Do you know on what bank the check was drawn?
"A No, sir, I can't say.
"Q Is your son, M.M. Weiss, Jr., or was he at the time of this purchase holding any property or money or cash in his name for your benefit?
"A. Yes, he was.
"Q What was he holding?
"A I can't tell you the amount. I don't remember the amount.
"Q Was it money?
"A Yes.
"Q Were these monies that you had given to him at a prior date?
"A No, sir. He was holding it only in the sense that he was my power of attorney at the time. I was in a very bad mental and nervous state and didn't feel qualified to handle anything at the time.
"Q Had you transferred all of your, say, cash assets over that your son could draw checks on any account that you had?
"A I don't recall whether I had an account at the time. As power of attorney he had * * *
"Q Did your son have a bank account at that time?
"A I guess he did.
"Q You just testified he gave you a check to pay this approximately $9,000 closing on this piece of property. Did he give you a check or did he give you cash?
"A I didn't testify he gave me the check. I didn't remember whether the check was given to me or directly to Kozich.
"* * *"
[2] "4. The defendant, Weiss, is not entitled to claim the exemptions provided by Article X, Section 1, of the Florida Constitution [F.S.A.] on the entire property. His exemption should only cover that portion of the property which is occupied by the apartment unit that Weiss actually physically occupies as his residence. The balance of the property is subject to execution sale. (Smith v. Guckenheimer (Fla. 1900), [42 Fla. 1] 27 So. 900; Lockhart et al. v. Sasser (Fla. 1945), [156 Fla. 339] 22 So.2d 763).

"5. Because of the impossibility of physically dividing the property and of apportioning the mortgage to each parcel of property, provision should be made regarding the right and responsibility of the owners after an execution sale. The defendant, M.M. Weiss, Sr., should be required to contribute his proportionate share of mortgage payments, insurance premiums, taxes, maintenance, repair and upkeep of the property. The survey as herein required should determine the percentage of the entire roofed building area occupied by the defendant, Weiss. He should then be required to contribute that percentage of all mortgage payments, real property tax payments, insurance premiums, and building repair, maintenance and upkeep. If Weiss, his successor or assign, should fail to make his pro rata payment of any of the items above enumerated and the same are made by the adjoining owner, said portions of the payments shall become a lien on Weiss' property and be subject to foreclosure in the appropriate court upon ten days written notice of default given to Weiss.
"6. In order to determine the legal description of the property which is homestead and which is not and the proportionate square foot area of building on each, a survey should be made.
"It is, thereupon, CONSIDERED, ORDERED AND ADJUDGED that the defendant, M.M. Weiss, Sr., is only entitled to the homestead exemption under the provisions of Article X, Section 1, of the Florida Constitution on that apartment unit which he actually occupies, together with a right of ingress and egress to a public street. The balance of the property is subject to execution sale.
"* * *"